UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAQUAN BEARD individually and on behalf of all others similarly situated, ALLEN STEMBRIDGE individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:24-cv-02240-SEB-TAB |
| GRAMMER LOGISTICS, INC., | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Plaintiff delivery drivers Daquan Beard ("Mr. Beard") and Allen Stembridge ("Mr. Stembridge") (together, "Plaintiffs") brought this putative class action against Defendant Grammer Logistics, Inc. ("Grammer"), alleging that Grammer improperly classified them as independent contractors and made unlawful deductions from their wages, in violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-2, or, alternatively, the New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1. Now before the Court is Grammer's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 19. For the reasons stated below, that motion is hereby **GRANTED in part** and **DENIED in part**.

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, courts must construe "all well-pleaded allegations of the complaint as true and view[ ] them in the light most favorable to the plaintiff."

*Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). However, courts need not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011). The plausibility inquiry is, at bottom, a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (internal quotation and citation omitted).

## BACKGROUND

### I. Factual Averments

Grammer is an Indiana logistics company and federally-registered motor carrier that specializes in the transportation and delivery of hazardous materials, such as propane and butane. First. Am. Compl. ¶¶ 1–2, dkt. 8 (hereinafter, the "FAC"). From July 2021 through January 2024 and September 2022 and April 2024, respectively, Mr. Beard and Mr. Stembridge were employed by Grammer as fulltime delivery drivers out of a large Grammer warehouse located in Port Reading, New Jersey. *Id.* ¶¶ 13–14, 18.

Mr. Beard and other putative class members signed independent contractor agreements with Grammer. *Id.* ¶ 19. These agreements, which Grammer allegedly crafted, contain a choice-of-law and forum-selection clause providing for the application of "the laws of the United States and of the State of Indiana" and for any dispute "arising from or in connection with this Agreement or otherwise with respect to the overall relationship between the parties" to be "brought exclusively in state or federal courts located in Bartholomew County, Indiana." Dkt. 20-2 at 5.[1]

---

[1] A copy of the Independent Contractor Agreement between Grammer and Mr. Beard is attached as an exhibit to Grammer's Motion to Dismiss. Dkt. 20-2. Consistent with Federal Rule of Civil Procedure 10(c), "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). In this case,

Mr. Stembridge represents another putative class of drivers who allegedly performed delivery services for Grammer without entering into a direct contractual relationship vis-à-vis an Independent Contractor Agreement. FAC ¶¶ 20, 32, 34, dkt. 8. According to the FAC, Grammer nevertheless treated these drivers as independent contractors. *Id.*

Plaintiffs allege that their independent contractor status notwithstanding, they "exercised virtually no independent control over their work life" due to the extensive control that Grammer maintained over their work. For example, Plaintiffs aver that they worked for Grammer on a fulltime basis and were required to display Grammer's logo on their vehicles, which were registered under Grammer's motor carrier authority; that Grammer negotiated and arranged with its customers all pick-up and delivery times; and that Grammer required all drivers to keep a cell phone and GPS readily available to them so that Grammer could relay pickup and delivery schedule changes in real time. *Id.* ¶¶ 22–25. Grammer also allegedly imposed mandatory requirements on drivers and retained the ability to discipline and/or terminate drivers. *Id.* ¶ 27. Due to Grammer's alleged extensive control over scheduling, customer negotiations, and daily operations, Plaintiffs and putative class members could neither exercise any legitimate independent business judgment nor perform delivery services for other companies. *Id.* ¶¶ 24, 26, 28.

The FAC alleges that Grammer required delivery drivers, including Plaintiffs, to pay for their own fuel and maintenance; and that Grammer deducted from Plaintiffs' pay expenses for insurance coverage, fines and penalties, and an escrow fund—totaling hundreds of dollars in deductions every week. *Id.* ¶¶ 29–30.

---

Plaintiffs readily reference the Independent Contractor Agreement(s) with Grammer throughout their complaint. FAC ¶¶ 8, 12, 19, 31, 33, dkt. 8. Thus, we regard these documents as central to Plaintiffs' claim "as they constitute the core of the parties' contractual relationship." *Venture Assocs.*, 987 F.2d at 431–32.

## II. Litigation History

On December 19, 2024, Plaintiffs filed this putative class action lawsuit, pursuant to Federal Rule of Civil Procedure 23, in our court on the basis of diversity jurisdiction. Dkt. 1. On March 3, 2025, Grammer moved to dismiss the operative pleading, the First Amended Complaint, for failure to state a claim upon which relief can be granted. Dkt. 19. Grammer's motion is fully briefed and ripe for ruling.[2]

## DISCUSSION

Grammer seeks dismissal of the Plaintiffs' Indiana Wage Payment Statute Claim on three grounds: (1) the FAC does not allege whether Plaintiffs departed from their employment voluntarily; (2) the Indiana Wage Payment Statute does not apply extraterritorially; and (3) the FAC does not adequately aver that Plaintiffs received "wages," as that term is defined by Indiana law, from Grammer. Plaintiffs' alternative wage claim under New Jersey law must also be dismissed, Grammer contends, because the FAC does not adequately allege that Grammer paid "wages" within the meaning of New Jersey law; and because, in any event, the alleged deductions in this case were authorized by New Jersey and federal law.

As a federal court sitting in diversity jurisdiction, a choice-of-law analysis would ordinarily precede our review of the legal sufficiency of a complaint alleging state-law wage deduction claims. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 807–08 (7th Cir. 2020). In seeking dismissal, Grammer has sidestepped these threshold choice-of-law considerations altogether, arguing that Plaintiffs' allegations fall short as a matter of Indiana *and* New Jersey law. We address Grammer's arguments accordingly.

---

[2] We recognize that Plaintiffs' Motion for Class Certification, filed on November 10, 2025, remains pending and awaits a ruling. Dkt. 56. That motion shall be undertaken and resolved in due course.

## I. Indiana Wage Payment Statute

The Indiana Wage Payment Statute ("IWPS") provides, in pertinent part, that "[e]very . . . corporation . . . doing business in Indiana, shall pay each employee at least semimonthly or bi-weekly, if requested, the amount due the employee." I.C. § 22-2-5-1(a). "Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment." *Id.* § 22-2-5-1(b). An employer who violates the IWPS is "liable to the employee for the amount of unpaid wages." *Id.* § 22-2-5-2.

Grammer argues that Plaintiffs' IWPS fails at the pleading stage because the FAC lacks factual allegations revealing whether Plaintiffs and putative class members were voluntarily separated, were employed in Indiana, and were paid wages—all of which are threshold predicates to a viable IWPS claim. Because Grammer's first argument is dispositive, our analysis addresses the issue of voluntary separation only.

### A. Voluntary Separation

The IWPS "provides an avenue for relief to employees seeking unpaid wages who *voluntarily* leave their employment or who remain employed and whose wages are overdue." *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011) (emphasis added). Employees who have been fired or involuntarily separated from employment, by contrast, must proceed under the Indiana Wage Claims Statute. Ind. Code § 22-2-9-2. Although the IWPS and the Wage Claims Statute "provide the same remedy for similar wrongs, they require distinct procedural steps before such a remedy may be granted"—hence the relevancy of whether an employee's separation from employment was voluntary or involuntary. *Treat*, 646 F.3d at 488. An employee's status at the time she files suit determines whether her claims arise under the IWPS or the Indiana

Wage Claims Statute. *Bragg v. Kittle's Home Furnishings, Inc.*, 52 N.E.3d 908, 915 (Ind. Ct. App. 2016).

Here, the FAC avers that Mr. Beard "worked as a New Jersey based delivery driver for Grammer between July 2021 and January 2024" and that Mr. Stembridge "worked as a New Jersey based delivery driver for Grammer between September 2022 and April 2024." FAC ¶¶ 13–14, dkt. 8. As emphasized by Grammer, Plaintiffs' allegations do not reveal whether their separation from employment was voluntary or involuntary. In Grammer's view, the FAC's "silen[ce] about an essential element" of Plaintiff's IWPS claim warrants dismissal at the pleading stage.

Plaintiffs, for their part, do not respond to Grammer's argument nor do they otherwise clarify whether their departure from employment was voluntary. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond results in waiver). Because Plaintiffs have failed to allege that they were voluntarily separated from their employment, which is an essential factual predicate to their recovery under the IWPS, Grammer's motion to dismiss shall be **granted** with regard to Plaintiffs' IWPS claim.[3]

**II. New Jersey Wage Payment Law**

The New Jersey Wage Payment Law ("New Jersey WPL") prohibits employers from "withhold[ing] or divert[ing] any portion of an employee's wages unless . . . [t]he employer is required or empowered to do so by New Jersey or United States law; or . . . [t]he amounts withheld or diverted are for" certain prescribed purposes. N.J. Stat. Ann. § 34:11-4.4. "Wages" are defined by New Jersey law as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission bases excluding any

[3] A review of Plaintiffs' reply brief in support of their motion for certification (which remains pending) reveals that Plaintiffs "have elected to move forward with their claims under [the New Jersey WPL] only." Dkt. 65 at 6–7 n.12.

form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11-4.1(c).

Grammer argues that Plaintiffs' New Jersey WPL claims must be dismissed because the FAC fails to adequately allege the payment of "wages," as that term is defined by New Jersey law, and because federal law—namely, the Federal Leasing Regulations—specifically authorizes the types of deductions allegedly made in this case.

**A. "Wages" under New Jersey Law**

The FAC alleges that Grammer paid Messrs. Beard and Stembridge "compensation for their services that are wages within the meaning" of New Jersey law. FAC ¶ 49, dkt. 8. Plaintiffs allegedly "received weekly pay statements from Grammer reflecting . . . various deductions . . . from their pay" for insurance coverage, fines and penalties, and escrow." *Id.* ¶ 30. These deductions, Plaintiffs allege, "often total[ed] hundreds of dollars a week." *Id.* Plaintiffs also aver that Grammer required them (and others) to pay out-of-pocket expenses for fuel and vehicle maintenance. *Id.* ¶ 29.

Accepting the FAC's factual averments as true, as we must on a motion to dismiss, we conclude that Plaintiffs have adequately alleged that Grammer paid them "wages" for purposes of stating a claim under the New Jersey WPL. In moving to dismiss, Grammer argues that Plaintiffs' averments are too conclusory to plausibly support an inference that they were paid "wages." Grammer's contentions, however, ask us to scrutinize Plaintiffs' factual allegations beyond what our federal pleading rules require, which is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The FAC meets this standard by averring that Plaintiffs were paid by Grammer for delivery driving services and that Grammer allegedly made unlawful deductions from their compensation. *See Guimaraes v. Metal Transp., LLC*, 790 F. Supp.

3d 389, 404–05 (M.D. Pa. 2025). Whether Plaintiffs can ultimately muster proof that Grammer's alleged payments to them constitute "wages" under New Jersey law remains to be seen. *See Musker v. Suuchi, Inc.*, 260 N.J. 178, 186–87 (2025) (detailing "wages" under the New Jersey WPL). At this early juncture, however, Plaintiffs' allegations are sufficient to survive Grammer's pleading challenge.

**B. Deductions under the Federal Leasing Regulations**

Grammer asserts that Plaintiffs' New Jersey WPL claim fails at the pleading stage because the alleged deductions were lawful under the Federal Leasing Regulations (specifically, the Truth in Leasing regulations). According to Grammer, the Federal Leasing Regulations govern the contractual relationship between motor carriers, like Grammer, and contractors, like Mr. Beard (acting on behalf of his LLC).[4] Those federal regulations, Grammer continues, specifically authorize the deductions for insurance and escrow payments, among other things, demonstrating that Plaintiffs' allegations of unlawful deductions are legal nonstarters.

The Federal Leasing Regulations govern owner-operator leases of equipment to registered motor carriers. 49 C.F.R. § 376.1. These regulations "protect owner-operators by requiring carriers to enter into written leases [that contain] certain mandatory terms" and that outline in detail the conditions of the agreement between the parties. *Johnson v. Logistics*, No. 16-CV-06776, 2018 WL 1519157, at *5 (N.D. Ill. Mar. 28, 2018). Under 49 C.F.R. § 376.12, lease agreements must specify the allocation of responsibility for, *inter alia*, truck purchase or rental payments, insurance coverage, and escrow funds. 49 C.F.R. § 376.12(i), (j)(1), (j)(3), (k)(6).

---

[4] Grammer limits this argument to the claim asserted by Mr. Beard and the putative class he represents, since Mr. Stembridge allegedly did not sign an independent contractor agreement. Dkt. 28 at 8 n.8

Returning to the case at bar, Grammer contends that it was "empowered . . . by . . . United States law"—to wit, the Federal Leasing Regulations—to "withhold or divert" portions of Plaintiffs' pay, which establishes that no wage-deduction violation occurred. N.J. Stat. Ann. § 34:11-4.4. In Grammer's view, the Federal Leasing Regulations allow contracting parties, like Grammer and Mr. Beard here, "to establish a deductions arrangement for expenses" through their independent contractor agreements. Dkt. 20 at 13.

A conclusive resolution of the legality of Grammer's alleged deductions—particularly in the context of the Federal Leasing Regulations—exceeds the scope of our review of the pleadings. As Plaintiffs highlight, their complaint contains no averments relating to any "lease" or owner-operator arrangement. Rather, the FAC avers that Grammer misclassified Plaintiffs and other similarly situated delivery drivers as independent contractors, rather than as employees, notwithstanding the existence of an independent contractor agreement (at least with regard to Mr. Beard, as Mr. Stembridge allegedly "did not have [his] own contract with Grammer," FAC ¶ 20, dkt. 8). *See Portillo v. Nat'l Freight, Inc.*, 781 F. Supp. 3d 236, 245 (D.N.J. 2025) (rejecting similar defense and stating "an agreement that was intended to apply only to independent contractors cannot be used to establish compliance with a statute that protects employees"). The Federal Leasing Regulations certainly may "empower" Grammer to make certain deductions vis-à-vis its independent contractors. Resolution of these factual and legal issues is not appropriate at the pleading stage, however. Grammer's Motion to Dismiss shall be **denied** accordingly.

## CONCLUSION

For these reasons, Grammer's Motion to Dismiss is hereby **GRANTED in part** and **DENIED in part**. Dkt. 19. Plaintiffs' IWPS claim is hereby **DISMISSED without prejudice**.

This matter shall proceed accordingly.

IT IS SO ORDERED.

Date: 9/30/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to counsel of record via CM/ECF